IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BERNARDO ANGELO BURRELL,      \*
      Plaintiff,

     v.                     \*     CIVIL ACTION NO. PJM-13-1020

J. MICHAEL STOUFFER,  et al.,      \*
      Defendants.

                             \*\*\*

## MEMORANDUM OPINION

Pending is a Motion to Dismiss, or in the alternative Motion for Summary Judgment filed on behalf of Defendants J. Michael Stouffer and Bobby P. Shearin.  ECF No. 16.   Plaintiff has responded.  ECF No. 26.  Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary.  *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, the dispositive motion filed by Defendants will be granted.

Background

Plaintiff states that on October 9, 2012, while housed at the North Branch Correctional Institution ("NBCI"), he was sentenced to 365 days on disciplinary segregation.  He states that disciplinary segregation inmates are permitted a limited amount of property in their cells and that "most of their property [is] held in storage until they are released from Disciplinary Segregation." ECF No. 1.  Plaintiff states that after receiving his disciplinary segregation sanction he was advised that his non-allowable property, already being held in storage, would need to be mailed out of the institution or it would be destroyed.  *Id*. Plaintiff indicates that despite asking for a delay in the disposition of his property due to his pending appeal of the disciplinary sanction and his belief that pursuant to Division of Correction Regulations he had a right to have his property stored by the institution, his property was destroyed.  *Id*.

1

Additionally, Plaintiff claims that another inmate, Jean Germain, is serving a lengthy disciplinary segregation sentence but has been permitted to store his property. Plaintiff indicates that he is treated differently from Germain because Germain is deemed a "jail house lawyer[s]." *Id.*

By way of amended complaint (ECF No. 6), Plaintiff alleges that his property was destroyed without a pre-deprivation hearing as required under Maryland regulations. He states that the NBCI policy regarding property results in his being treated differently from other NBCI inmates and inmates in other Maryland DOC institutions who are similar situated. *Id.*

Defendants indicate that Plaintiff was transferred to NBCI on January 26, 2012. ECF No. 16, Ex. 1. On September 30, 2012, Plaintiff was involved in a fight with several other inmates during which one of the inmates was assaulted with a homemade weapon. *Id.*, Ex. 2. A review of the surveillance system showed Plaintiff disposing of a weapon after the fight. *Id.*

As a result of the altercation, Plaintiff was charged with violating institutional rules #102-assault or battery on another inmate, and #105- possession of a weapon. *Id.*, Ex. 3. A hearing on the rule violation was held on October 9, 2012. Plaintiff was found guilty of the rule infractions and sanctioned with 365 days of disciplinary segregation. He did not have any good conduct credits revoked. Plaintiff's appeal to the Warden was denied on November 5, 2012. *Id.*, p. 1-3. Thereafter, Plaintiff filed an appeal to the Inmate Grievance Office (IGO). *Id.*, Ex. 6. The IGO appeal was dismissed on January 17, 2013. Plaintiff noted an appeal to the Circuit Court for Allegany County. *Id*, Ex. 7. The appeal was dismissed on September 5, 2013. ECF No. 26, Ex. 1, p. 3 of Plaintiff's Declaration.

On October 12, 2012, Plaintiff's non-allowable property was confiscated and held for disposition. *Id.*, Ex. 4. Plaintiff filed an administrative remedy request (ARP) on October 29, 2012, complaining of the confiscation of his property. *Id.*, Ex. 5. The ARP was investigated and dismissed

on November 7, 2012. The ARP dismissal noted that Plaintiff requested his property be stored until his release form disciplinary segregation. Plaintiff was advised that because his segregation sentence exceeded 180 days, all of the non-allowable property had to be inventoried and mailed out of the institution pursuant to NBCI directives. *Id*. Plaintiff's appeal of that dismissal, dated November 9, 2012, but not received at DOC Headquarters until May 13, 2013, was dismissed as untimely. *Id*. Plaintiff filed an appeal to the IGO regarding the disposition of his property. The IGO appeal was dismissed due to Plaintiff's failure to properly exhaust the ARP process, as he was unable to substantiate that the appeal was timely filed. *Id*., Ex. 6. The Circuit Court for Allegany County affirmed the IGO's administrative decision. *Id*., Ex. 8.

On February 19, 2013, an Information Report Form was prepared requesting Plaintiff's property be considered abandoned and disposed of in accordance with Division of Correction Directive (DCD) #220-004. The Form noted that the property was confiscated in accordance with NBCI Institutional Directive (ID) #110-6-1 due to Plaintiff's receiving more than 180 days of disciplinary segregation and that he refused to designate a disposition of the property within the allotted 30 day time period. *Id*., Ex. 9. The request was approved on February 22, 2013. On March 13, 2012, an Information Report Form was prepared indicating that DOC Headquarters approved the disposal of Plaintiff's property and noting that the property was place in a dumpster. *Id*., Ex. 10. It was further noted that NBCI's ARP office and the IGO verified there were no known ARPs or grievances pending at that time regarding the property. *Id*.

Sgt. Robert Harris, property room officer, avers that he reviewed the property files of inmates Jean Germain and Antonio Rogers.[1] Harris avers that the NBCI Property Room is not storing any of Germain's property as Germain's non-allowable property was confiscated and destroyed at

---

[1] Plaintiff claims Rogers is a disciplinary segregation inmate treated differently from him in that his property was

Germain's instruction and pursuant to the NBCI ID, after Germain received a disciplinary segregation sentence in excess of 180 days. *Id.*, Ex. 11. Harris further avers that the NBCI ID regarding disposal of excess property for long term disciplinary segregation inmates did not become effective until September 1, 2009, which was after Rogers received his disciplinary segregation term. As such, the directive did not apply to Rogers. *Id.* Harris further avers that he has no knowledge or information that Plaintiff was treated differently than any other inmate housed at NBCI regarding the confiscation, detention, or destruction of inmate property. *Id.*; *see also* ECF No. 16, Ex. 13 and 14.

**Standard of Review**

A.      Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the  plaintiff's complaint.  *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).   The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.  *Id.* at 563.  The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.      Motion for Summary Judgment

---

stored for him. ECF No. 6.

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether

5

he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Analysis

A.     Supervisory Liability

Plaintiff's complaint against Warden Shearin and J. Michael Stouffer is based solely upon the doctrine of *respondeat superior,* which does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), *citing Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3)

6

there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Plaintiff has pointed to no action or inaction on the part of Shearin or Stouffer that resulted in a constitutional injury. Accordingly, his claims against them shall be dismissed.

B.      Property

Plaintiff's claim that his property was improperly destroyed is unavailing. In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U. S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy.[2]  *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[3]  Records reflect that Plaintiff's property was inventoried and he failed, despite repeated opportunities to do so, to designate where his excess property should be sent. As noted, even if Plaintiff's property were improperly destroyed, such a claim does not rise to a constitutional violation.

Moreover, the Court finds that the Institutional Directive requiring confiscation and disposition of personal property for those on long-term disciplinary segregation does not implicate a liberty interest. Prisoners for a variety of reasons, including space limitations, are directed to send property to the "outside" for safe-keeping. That Plaintiff was provided this option while serving a long-term disciplinary segregation sentence does not amount to an "atypical and significant

---

[2]Plaintiff had remedies under the Maryland's Tort Claims Act and through the Inmate Grievance Office. That Plaintiff's efforts at filing claims under the Tort Claims Act or through the IGO were unsuccessful does not mean that the remedies available were not constitutionally adequate.

[3]Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing plaintiff's due process claim.

hardship...in relation to the ordinary incidents of prison life" in violation of *Sandin v. Conner,* 515 U.S. 472, 484-86 (1995). To the extent that any written directive were not followed to the letter, the adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987).[4]  Moreover even "[i]f the state law grants more procedural rights than the Constitution would otherwise require, a State's failure to abide by that law is not a federal due process issue." *Riccio v. County of Fairfax*, 907 F.2s. 1459, 1469 (4th Cir. 1990).

To the extent Plaintiff's allegations regarding the destruction of his property is construed as denial of access to the courts, the claim similarly fails. Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977).  However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.' *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), quoting *Lewis,* 518 U.S. at 355.  "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional

---

[4]Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

principle that prevents courts of law from undertaking tasks assigned to the political branches."
*Lewis*, 518 U.S. at 349.  To the extent Plaintiff alleges any legal materials were missing he has failed
to demonstrate an actual injury from the loss of those materials.

C.      Equal Protection

        The Equal Protection Clause is "essentially a direction that all persons similarly situated
should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U. S. 432, 439 (1985)
(citation omitted).  In cases such as this one where no suspect criterion such as race is involved, the
proper inquiry is whether the statute or regulation serves a legitimate state interest and whether the
challenged classification is rationally related to it.  *See Moss v. Clark*, 886 F. 2d 686, 690 (4th Cir.
1989).  Thus the policies in place regarding the storage of long term segregation inmates' property
must meet a test of reasonableness.  *Turner v. Safely*, 482 U.S. 78,  (1987).  "Lawful incarceration
brings about the necessary withdrawal or limitation of many privileges and rights, a retraction
justified by the considerations underlying our penal system." *O'lone v. Estate of Shabazz*, 482 U.S.
342, 348 (1987).  So long as the restrictions placed on inmates do not jeopardize the health of the
inmates subject to them and there is a rational relationship between those restrictions and the need for
protection of the inmates, equal protection is not violated.  *See Taylor v. Rogers*, 781 F. 2d 1047 (4th
Cir. 1986).  Here, Plaintiff has failed to show that he was treated differently than any other inmate. In
fact, the record evidence flatly contradicts his claim.[5]  Nor can he demonstrate any discriminatory

---

[5] In his opposition response Plaintiff provides affidavits from several inmates who maintain that they received over
200 days of disciplinary segregation but their property was maintained at the institution.  Plaintiff postulates that the
reason their property was held was because they are either "jail house lawyers" or they signed off on ARPs.  ECF No.
26, Exs. 31, 33-34.  None of Plaintiff's declarations or other evidence supports such a finding nor does the evidence
presented by Plaintiff bring any material fact into dispute.
        The documents pertaining to inmate Chaz Johnson (*Id.*, Ex. 33) specifically note that the property was being held
pending Johnson's appeal of his disciplinary infraction.  Plaintiff's property was also held until correctional staff
verified that he had no administrative proceedings pending then the property was destroyed due to Plaintiff's refusal
to designate a location for it to be mailed.  The declaration from Travis Terry simply acknowledges that his property
was retained while he was on segregation. There is no information regarding what, if any, appeals were pending by
Terry during that time. *Id.*, Ex. 34.

animus in the handling of his property. Additionally, decisions regarding the space available at a particular facility to store inmate property are decisions best left to the administrators of that facility and are reasonable related to the needs for security and safety in the day to day administration of a facility. *See Bannan v. Angelone*, 962 F. Supp. 71, 73-4 (W. D. Va. 1996) (unless other rights such as religion or speech are involved, jails may constitutionally disallow possession of personal property.) As such, Plaintiff cannot demonstrate an equal protection violation.

### Conclusion

The dispositive motion filed on behalf Warden Bobby P. Shearin and Commissioner J. Michael Stouffer will be granted.   A separate Order follows.

_____/s/_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

July 8, 2014

---

Plaintiff has also provided a declaration from Jean Germain and a copy of the Declaration of Randolph Bennett filed in *Germain v. Stouffer*, Civil Action No. JFM-12-2913 (D. Md), which indicates that "the property belonging to Jean Germain, which Jean Germain is not currently allowed to maintain in his cell due to his disciplinary segregation status, other than perishable items, are currently being stored in the North Branch Correctional Institutional Property Room." ECF No. 26, Ex. 6 & 32.  The affidavit, dated February 15, 2013, does not directly conflict with the affidavit provided in this case indicating that the non-allowable property ultimately was destroyed.